EDWARDS, Senior Circuit Judge,
concurring:
I agree with the majority that the Federal Communications Commission (“FCC” or “Commission”) has neither direct nor ancillary authority under Section 624A of the Communications Act, 47 U.S.C. § 544a, nor ancillary authority under Section 629(a) of the Act, 47 U.S.C. § 549(a), to impose the disputed “encoding rules” on satellite carriers. The Commission’s positions on these points cannot survive scrutiny under Chevron Step One or Step Two. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As the majority opinion makes clear, the claims advanced by the FCC are entitled to no deference because they are *305 “manifestly contrary to the statute.” Id. at 844,104 S.Ct. 2778.
I do not read the majority opinion to say that the FCC has no authority under Section 629 to impose encoding rules on satellite carriers, however. This court certainly cannot say that Congress’ direction to the FCC to ensure the commercial availability of navigation devices may never be reasonably interpreted to support the application of encoding rules on satellite carriers. We simply do not know this. Congress obviously afforded the FCC considerable discretion in directing the agency to promulgate standards “to assure the commercial availability ... of converter boxes, interactive communications equipment, and other equipment used by consumers to access multichannel video programming and other services offered over multichannel video programming systems, from manufacturers, retailers, and other vendors not affiliated with any multichannel video programming distributor.” 47 U.S.C. § 549(a). The statute does not by its terms prohibit the requirement of encoding rules. Rather, any challenge to the agency’s exercise of its discretion under Section 629 must take into account the circumstances presented and the Commission’s explanation for the action in question.
Petitioner readily concedes that “the plug-and-play standards” adopted by the FCC “may be deemed within the scope of Section 629.” Pet’r Br. at 20. Petitioner’s concern is that “the nature of the encoding rules as a quid pro quo to get a private party to agree to these standards is not a sufficient nexus to Section 629.” Id. Nexus, however, is not necessarily a matter of authority; rather, it concerns a connection, bond, or link between different things. I agree that, in this case, the FCC has failed to show the necessary link between the imposition of encoding rules on satellite carriers and the mandate of Section 629. Therefore, the agency’s decision fails for want of reasoned decisionmaking, not for lack of authority. See Motor Vehicle Mfrs. Ass’n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 468 U.S. 29, 48, 108 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (holding that, to survive arbitrary and capricious review, “the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made”); see also Judulang v. Holder, — U.S.-, 132 S.Ct. 476, 483-85 & n. 7, 181 L.Ed.2d 449 (2011) (holding that an irrational application of a statute is arbitrary and capricious).
In some circumstances, there is an overlap in the analysis required pursuant to Chevron Step Two, 467 U.S. at 843—45,104 S.Ct. 2778, and that required under the arbitrary and capricious standard enunciated in State Farm, 463 U.S. at 42-44, 103 S.Ct. 2856. See, e.g., Arent v. Shalala, 70 F.3d 610, 616 n. 6 (D.C.Cir.1995); see also id. at 620 (Wald, J., concurring in the judgment) (“Because both standards require the reviewing court to ask whether the agency has considered all of the factors made relevant by the statute, this court has often found the State Farm line of cases relevant to a Chevron step two analysis.”). Nonetheless, absent plain meaning in the authorizing statute, a court should be loathe to preemptively declare that an agency has no authority to apply a certain operating standard when it is impossible to know whether the disputed standard might be permissible under different circumstances. See Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 985, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (holding that, “[b]efore a judicial construction of a statute, whether contained in a precedent or not, may trump an agency’s, the court must hold that the statute unambiguously *306 requires the court’s construction”). On this record, the court cannot possibly know whether or to what extent the FCC might permissibly impose encoding rules on satellite carriers pursuant to Section 629.
Petitioner has pressed the point that, in the circumstances at hand, the Commission’s application of the encoding rules to all Multichannel Video Programming Distributors (“MVPD”) is arbitrary and capricious. See Pet’r Br. at 40-48. Indeed, Petitioner convincingly shows that the FCC adopted the disputed encoding rules here to serve the interests of the cable industry and consumer electronics manufacturers in almost total disregard of the interests of satellite carriers.
The FCC acknowledged the fait accompli nature of the [disputed] rules: “[a]bsent adoption of these encoding rules, the cable and consumer electronics industries have indicated that the compromise agreement reached in the [Memorandum of Understanding Among Cable MSOs and Consumer Electronics Manufacturers (“MOU”) ] will be upset and their efforts to produce unidirectional digital cable products will falter.” Plug and Play Order, 18 FCC Red. at 20906 ¶ 47. The very speed with which the FCC placed the MOU and its rules on public notice (22 days) foreshadowed the FCC’s acquiescence. The FCC appears to have taken little time to independently review and consider the proposal based on statutory objectives. The FCC did not propose any independent revisions to the proposed rules, and instead simply issued the MOU-proposed rules as its own proposal. The Plug and Play Order went on to adopt the encoding rules in their entirety, and apply them to all MVPD providers for one principal reason—lest the MOU fall apart and leave the FCC with unfulfilled directives under Sections 624A and 629.
This reasoning is of suspect validity at best. First, the FCC did not have its hands tied; it could promulgate its own set of rules—a better set of rules that considers the positions of all MVPD providers. Second, the threat of defection from a private agreement should not carry weight in an agency’s deliberation. The FCC acts pursuant to statutory authority and objectives, and the FCC’s reasoning that its directive would be frustrated were the MOU to falter is reasoning that is far too attenuated.
Pet’r Br. at 42-43.
Much of what Petitioner says is on the mark and unrefuted by the FCC. However, I reject Petitioner’s suggestion that FCC rulemaking may never take into account the threat of defection from a private agreement. This argument overreaches. The telling point in this case is that the FCC relied on a threat of defection that was tied to a condition—requiring satellite carriers to adopt encoding rules— that was patently unreasonable. Apart from the threat of defection, the FCC failed to explain how requiring satellite carriers to adopt encoding rules was necessary to assure the commercial availability of converter boxes and other equipment pursuant to Section 629.
In sum, it is clear that the action taken by the FCC pursuant to its asserted authority under Section 629 was the antithesis of reasoned decisionmaking and, thus, arbitrary and capacious. In my view, there is no Chevron issue to be decided by this court. See Judulang, 132 S.Ct. at 483 n. 7. On this record, the imposition of the disputed encoding rules on satellite carriers fails for lack of reasoned decisionmaking.